Marion C. Passmore (SBN 228474)
  passmore@bespc.com
Melissa A. Fortunato (SBN 319767)
  fortunato@bespc.com
BRAGAR EAGEL & SQUIRE, P.C.
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Facsimile: (212) 214-0506

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALEN BRADFORD and GARY BROWN, derivatively on behalf of SUNPOWER CORPORATION, | Case No.: |
| Plaintiffs, | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| NATHANIEL ANSCHUETZ, JONATHAN BRAM, GUTHRIE DUNDAS, ELIZABETH EBY, PETER FARICY, JONATHAN FIELDSEND, VINAYAK HEGDE, STEVEN LOUDEN, THOMAS MCDANIEL, NATHALIE PORTES-LAVILLE, VINCENT STOQUART, and AUDREY ZIBELMAN, | |
| Defendants, | |
| and | |
| SUNPOWER CORPORATION, | |
| Nominal Defendant. | |

**INTRODUCTION**

Plaintiffs Galen Bradford and Gary Brown (together, "Plaintiffs"), by and through their counsel, derivatively on behalf of Nominal Defendant SunPower Corporation ("SunPower" or the "Company") allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys. This investigation included the review and analysis of: (a) regulatory filings made by SunPower with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued and disseminated by SunPower; (c) analyst reports concerning SunPower; (d) pleadings, papers, and any documents filed with and publicly available from the related securities class action lawsuits pending in the United States District Court for the Northern District of California (the "Securities Class Actions"); and (e) other publicly available information regarding SunPower. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a stockholder derivative action brought by Plaintiffs on behalf of Nominal Defendant SunPower against certain of its officers and directors for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, abuse of control, gross mismanagement, and violations of Sections 10(b), 14(a), and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiffs seek to remedy the Individual Defendants' (defined below) violations of law that have caused and continue to cause substantial monetary losses to SunPower and other damages, including damages to its reputation and goodwill. Plaintiffs seek to remedy the Individual Defendants' violations that caused SunPower to make false and misleading statements in the Company's SEC filings and other public disclosures from March 9, 2023 until the present (the "Relevant Period"). These statements failed to disclose material adverse facts about SunPower's business, operations, and prospects.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

2.     SunPower, a Delaware corporation with principal executive offices in Richmond, California, provides photovoltaic ("PV") solar energy generation systems and battery energy storage products.  Its solar solutions are designed for residential customers, with PV systems that convert sunlight into electricity using semiconducting materials.

3.     On March 10, 2023, SunPower filed its annual report on Form 10-K for the year ended January 1, 2023 (the "2022 10-K"), which the Individual Defendants signed.  The 2022 10-K touted a 53% increase in revenue driven by organic residential growth and affirmed that SunPower's internal control over financial reporting was effective based on management's assessment.

4.     However, on July 26, 2023, the truth began to emerge when SunPower issued a press release announcing preliminary second quarter 2023 financial results and significantly reducing its earnings guidance for the full year 2023.  The Company slashed its outlook for key metrics including GAAP net loss, customer demand, residential Adjusted EBITDA per customer, and total Adjusted EBITDA.  On this news, SunPower's stock price plummeted by $1.77 per share, or 18.5%, to close at $9.45 per share on July 26, 2023.

5.     On October 24, 2023, SunPower shocked the market again by announcing that it would be forced to restate its financial statements for fiscal year 2022 and the first two quarters of 2023 due to material weakness in its internal controls over financial reporting.  The Company admitted that it had overstated the value of certain inventory and understated its cost of revenue during the relevant periods.  As a result of these revelations, SunPower's stock price plummeted 17.5%, erasing millions in shareholder value.

6.     The Company has since disclosed additional details regarding the severity and extent of its accounting improprieties.  On November 27, 2023, SunPower revealed that it had received a notice from Nasdaq threatening to delist the Company for failing to timely file its quarterly report on Form 10-Q.  Moreover, SunPower admitted that it is currently negotiating with its lenders regarding the impact of the restatement on its credit agreement, indicating that the Company may be at risk of defaulting on its significant outstanding debt.  The restated financials were filed with the SEC on December 18, 2023.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

7.      As a result of the Individual Defendants' breaches of fiduciary duty, the Company is now the subject of the federal Securities Class Actions and is facing the prospect of significant liability, reputational damage, and loss of investor confidence.  Through this action, Plaintiffs seek to hold the Individual Defendants accountable for their misconduct and to recover damages on behalf of the Company.

8.      The full extent of SunPower's accounting improprieties and the resulting harm to the Company continues to be revealed.  On February 15, 2024, SunPower announced dismal financial results for the fourth quarter and full year 2023, reporting a staggering GAAP net loss of $124 million for fourth quarter and $247 million for the year.  The Company also disclosed that it had secured $175 million in additional capital and $25 million in additional revolving debt capacity to alleviate its severe liquidity crisis.  However, just two weeks later on February 29, 2024, SunPower revealed that it would be unable to timely file its Annual Report on Form 10-K for fiscal year 2023 due to the time and effort required to complete the restatement of its previously issued financial statements.  The Company's continuing inability to file timely and accurate financial reports underscores the severity and duration of the internal control deficiencies caused by the Individual Defendants' misconduct.

9.      On April 23, 2024, SunPower dropped another bombshell, disclosing that the Company had identified additional misstatements in its fiscal year 2022 financial results, including the improper capitalization of certain costs and misclassification of certain expenses, resulting in an overstatement of the Company's income from continuing operations by $15 to $25 million.  The Company also revealed that its independent auditor had determined that its previously issued audit reports could no longer be relied upon.  These persistent accounting failures demonstrate that SunPower continues to suffer from pervasive and long-standing deficiencies in its internal controls and financial reporting processes.  As a result of the Individual Defendants' breaches of fiduciary duty, SunPower is now the subject of multiple class action lawsuits, has been threatened with delisting by Nasdaq, and is at risk of defaulting on its debt agreements.  The Company has been forced to raise dilutive capital on unfavorable terms just to keep the lights on.

10.     These results are the product of the Individual Defendants' misconduct.  During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making or causing the Company to make materially false and misleading statements regarding SunPower's business, operations, and prospects.  The Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact to the investing public that failed to disclose that: (1) SunPower had material weaknesses in its internal controls; (2) the Company inaccurately reported certain key financial metrics including cost of revenue and inventory due to these material weaknesses; and (3) the Company would foreseeably incur significant expenses to restate multiple quarters of financial statements as a result.  Consequently, the Company's public statements were materially false and misleading at all relevant times.

11.     The Individual Defendants failed to correct and/or caused the Company to fail to correct these materially false and/or misleading statements and/or omissions of material fact, thereby breaching their fiduciary duties to SunPower.  They further breached their fiduciary duties by failing to maintain an adequate system of oversight, disclosure controls, and procedures, and internal controls over financial reporting.  Additionally, the Individual Defendants caused SunPower to repurchase approximately $6.36 million worth of its own stock at artificially inflated prices while the Company's stock price was artificially inflated by the false and misleading statements discussed herein.  Thereby, they damaged the Company.

12.     Additionally, as a result of the Individual Defendants' misconduct, SunPower, its former Chief Executive Officer ("CEO"), its Chief Financial Officer ("CFO"), and its former CFO have been named as defendants in the Securities Class Actions that remain pending.  The Company is further exposed to the costs and burdens of undertaking internal investigations, implementing appropriate internal controls, and defending itself against the Securities Class Actions— expenditures that are likely to total many millions of dollars.

13.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the

1  substantial likelihood of the directors' liability in this derivative action and in the Securities Class

2  Actions, their being beholden to each other, their longstanding business and personal relationships

3  with each other, and their lack of independence and disinterestedness, a majority of SunPower's

4  Board of Directors (the "Board") cannot consider a demand to commence litigation against

5  themselves on behalf of the Company with the requisite level of disinterestedness and independence.

6                                    **JURISDICTION AND VENUE**

7        14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the

8  Complaint alleges a claim for violations of Sections 10(b) and 21D of the Exchange Act and SEC

9  Rule 10b-5 promulgated thereunder as well as Section 14 of the Exchange Act and SEC Rule 14a-9

10  promulgated thereunder.  The Court has supplemental jurisdiction over the pendent state law claims

11  pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or

12  controversy.  This action is not a collusive one designed to confer jurisdiction on a court of the

13  United States that it would not otherwise have.

14        15.    This Court has jurisdiction over each Defendant because they reside in this District

15  or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the

16  Court permissible under traditional notions of fair play and substantial justice.  Among other things,

17  Nominal Defendant SunPower's principal place of business is located in California, and the other

18  Defendants were officers and directors of SunPower at the time that their actions and omissions

19  giving rise to the claims occurred.

20        16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of

21  the Defendants either resides in or maintains offices in this District; a substantial portion of the

22  transactions and wrongs complained of herein, including the Defendants' primary participation in

23  the wrongful acts detailed herein and violation of fiduciary duties owed to the Company; and

24  Defendants have received substantial compensation in this District by doing business here and

25  engaging in numerous activities that had an effect in this District.

26

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

**PARTIES**

2        17.     Plaintiff Galen Bradford ("Bradford") is a SunPower stockholder and has

3   continuously held SunPower stock from the time of the wrongdoing alleged herein until the present.

4   Bradford will fairly and adequately represent SunPower's interest in this action.

5        18.     Plaintiff Gary Brown ("Brown") is a SunPower stockholder and has continuously

6   held SunPower stock from the time of the wrongdoing alleged herein until the present.  Brown will

7   fairly and adequately represent SunPower's interest in this action.

8        19.     Defendant SunPower is incorporated under the laws of Delaware with principal

9   offices located in Richmond, California.  SunPower's common stock trades on the NASDAQ under

10  the symbol "SPWR."  SunPower is referred to herein as the "Nominal Defendant".

11       20.     Defendant Nathaniel Anschuetz ("Anschuetz") has served as a member of the Board

12  since September 23, 2022 and has served as a member of the Nominating and Corporate Governance

13  Committee ("Governance Committee") since 2022.  Anschuetz personally signed the false and

14  misleading documents detailed herein.

15       21.     Defendant Jonathan Bram ("Bram") has served as a member of the Board since

16  September 23, 2022 and has served as a member of the Compensation Committee since 2022.  Bram

17  personally signed the false and misleading documents detailed herein.

18       22.     Defendant Guthrie Dundas ("Dundas") was the Company's Interim CFO from

19  August 29, 2022 to May 29, 2023.  Dundas is named as a defendant in the Securities Class Actions

20  and personally signed the false and misleading documents detailed herein.

21       23.     Defendant Elizabeth Eby ("Eby") has served as the Company's CFO since May 15,

22  2023.  Eby is named as a defendant in the Securities Class Actions.

23       24.     Defendant Peter Faricy ("Faricy") served as SunPower's CEO and President from

24  April 19, 2021 until his resignation on February 26, 2024, and as Chairman from November 2021

25  until February 26, 2024.  Faricy is named as a defendant in the Securities Class Actions and

26  personally signed the false and misleading documents detailed herein.

27

28

25.     Defendant Jonathan Fieldsend ("Fieldsend") has served as a member of the Board since July 24, 2022 and has served as a member of the Governance Committee since 2022.  Fieldsend personally signed the false and misleading documents detailed herein.

26.     Defendant Vinayak Hegde ("Hegde") has served as a member of the Board since January 25, 2022 and has served as a member of the Audit Committee since 2022.  He served as Chair of the Governance Committee from 2022 until 2023 and as Chair of the Compensation Committee since 2024.  Hegde personally signed the false and misleading documents detailed herein.

27.     Defendant Steven Louden ("Louden") has served as a member of the Board since March 14, 2023 and has served as Chair of the Audit Committee and member of the Compensation Committee since 2023.  He has served as a member of the Governance Committee since 2024.

28.     Defendant Thomas McDaniel ("McDaniel") served as a member of the Board from 2009 until his retirement in July 2023.  Defendant McDaniel served as Chair of the Audit Committee from June 2012 until 2020, as member from 2020 until 2023, and as Chair from January 2023 to March 2023. He served as a member of the Compensation and Governance Committees from at least 2015 until his retirement.

29.     Defendant Nathalie Portes-Laville ("Portes-Laville") served as a member of the Board from 2021 until her resignation on February 26, 2024, and personally signed false and misleading documents as detailed herein.

30.     Defendant Vincent Stoquart ("Stoquart") has served as a member of the Board since 2022 and has served as a member of the Compensation Committee since 2022.

31.     Defendant Audrey Zibelman ("Zibelman") has served as a member of the Board since May 18, 2023 and has served as a member of the Audit Committee and Chair of the Governance Committee since 2023.

32.     The following Defendants are collectively referenced herein as the "Individual Defendants": Anschuetz, Bram, Dundas, Eby, Faricy, Fieldsend, Hegde, Louden, McDaniel, Portes-Laville, Stoquart, and Zibelman.

33.     The following Individual Defendants are collectively referenced herein as the "Director Defendants": Anschuetz, Bram, Fieldsend, Hegde, Louden, McDaniel, Stoquart, and Zibelman.

34.     The following Individual Defendants are collectively referenced herein as the "Officer Defendants": Dundas, Eby, and Faricy.

35.     The following Individual Defendants are collectively referenced herein as the "Audit Committee Defendants": Hegde, Louden, McDaniel, and Zibelman.

36.     The following Individual Defendants are collectively referenced herein as the "Governance Committee Defendants": Anschuetz, Hegde, Fieldsend, Louden, McDaniel, and Zibelman.

37.     The following Individual Defendants are collectively referenced herein as the "Compensation Committee Defendants": Bram, Hegde, Louden, McDaniel, and Stoquart.

38.     The following Individual Defendants are collectively referenced herein as the "Securities Class Action Defendants": Dundas, Eby, and Faricy.

39.     The following Individual Defendants are collectively referenced herein as the "Proxy Defendants": Anschuetz, Bram, Dundas, Faricy, Fieldsend, Hegde, Louden, McDaniel, Portes-Laville, and Stoquart.

40.     The Individual Defendants and Nominal Defendant are collectively referenced herein as "Defendants."

41.     Relevant Non-Party Emmanuel Barrois ("Barrois") has served as a member of the Board since February 26, 2024.

42.     Relevant Non-Party Thomas H. Werner ("Werner") has served as Principal Executive Officer and Executive Chairman of the Board since February 26, 2024.

**THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY
DUTIES TO THE COMPANY AND ITS STOCKHOLDERS**

43.     At all times relevant to this case, the conduct of the Individual Defendants was governed by well-recognized rules to protect the Company and its stockholders, the members of the public who had invested in SunPower.

44.     Because of their positions as officers and/or directors of the Company and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

45.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

46.     Each of the Company's directors owes to the Company and its stockholders fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

47.     Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

48.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of SunPower were required to do the following:

•       Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and

disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

49.    The Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its stockholders despite their knowledge of the risk of serious injury to the Company.

50.    Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by SunPower.

51.    The SunPower Board has adopted SunPower's Code of Conduct to deter wrongdoing, which expressly applies to all the Individual Defendants.

52.     SunPower's Code of Conduct represents that it "powers one of [SunPower's] company values: we do the right thing[]" and is "a statement of SunPower's expectations regarding personal and corporate conduct."  The Code of Conduct states, in relevant part:

> All people representing SunPower, including employees, contractors, officers and directors of the company, must comply with this Code and avoid even the appearance of improper behavior.  The Code also applies to controlled subsidiaries and entities in which SunPower has a majority interest or manages the operations (together, the "Company").   All employees are required to certify to the Company on an annual basis that they have read, understand and agree to comply with the Code.  Our Code is not a contract and does not grant any specific employment rights or guarantee.

53.     In a section titled "Updates and Waivers," the Code of Conduct states:

> We will periodically update this Code.  Amendments to this Code (other than technical, administrative or non-substantive changes), must be approved by the Audit Committee of SunPower's Board of Directors. Any waiver of this Code must be approved by the Audit Committee or a Board committee consisting only of independent directors and will be promptly disclosed as required by law.

54.     In a section titled "Consequences for Violating the Code," the Code of Conduct states:

> Violating any law or this Code is a serious matter.  If SunPower determines that an employee has violated the law or this Code, that individual will be subject to disciplinary action, including possible termination of employment, loss of employment-related benefits, and, if applicable, criminal or civil proceedings.  Our incentive plans and programs require compliance with the law and this Code as a condition of participation and receiving an award.  An employee who violates the law within the scope of his or her employment, or who commits a serious violation of this Code, may not be entitled to incentive compensation, including annual or semi-annual cash bonuses, restricted stock units, or other awards, unless prohibited by law.

55.     In another section titled "Maintaining Accurate Records," the Code of Conduct further states:

> ***As a publicly traded company, SunPower has an obligation to maintain accurate business and financial records.  Each one of us has an obligation to ensure the records we generate are accurate.  Never misstate facts, omit critical information or modify records or reports in any way to mislead others, and never assist others in doing so.***  All financial transactions must be correctly and timely recorded in compliance with SunPower's internal controls and procedures.  No unrecorded funds or

11

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

assets may be created or maintained for any purpose.  Creating false or misleading records is strictly prohibited and may violate a number of laws, including the Sarbanes-Oxley Act, which may trigger both financial and criminal liability for the employee and/or SunPower.

(Emphasis added.)

## DIRECTOR DEFENDANTS ON PARTICULAR
## COMMITTEES OWE ADDITIONAL DUTIES

56.    The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee, which consisted of Hegde, Louden, McDaniel, and Zibelman during the Relevant Period.

57.    Pursuant to the Audit Charter, the overarching duties of the Audit Committee and its members include:

A.  provide oversight of the Company's accounting and financial reporting processes and the audit of the Company's financial statements and internal controls by the Company's independent public registered accounting firm ("independent auditor");

B.  assist the Board in the oversight of: (i) the integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the independent auditor's performance, qualifications and independence; and (iv) the performance of the Company's internal audit function;

C.  oversee management's identification, evaluation and mitigation of major risks to the Company;

D.  prepare an audit committee report as required by the Securities and Exchange Commission (the "SEC") to be included in the Company's annual proxy statement;

E.  provide to the Board such information and materials as it may deem necessary to make the Board aware of the financial matters requiring the attention of the Board; and

F.  consider questions of actual and potential conflicts of interest including related party transactions as well as any waiver of the Company's Code of Business Conduct and Ethics.

58.    Under the section titled, "Responsibilities and Duties," the Audit Committee Charter states that the Audit Committee shall do the following, in relevant part:

1.  review (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles or practices as suggested by management or the independent auditor; (ii) major issues as to the adequacy of the Company's internal controls and

any special compensating procedures or audit steps adopted in light of material control deficiencies and material weaknesses in the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements; and (v) an annual report furnished by Company management identifying key risks to the Company's worldwide business;

2. discuss with management and the independent auditor the Company's annual audited financial statements and quarterly unaudited financial statements and review the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to filing the Company's annual report on Form 10-K and quarterly reports on Form 10-Q, respectively, with the SEC and, with respect to the annual financial statements, the appropriateness and quality of accounting and auditing principles and practices, including any "critical audit matters" (as that term is defined in PCAOB AS 3101), as well as the adequacy of internal controls that could significantly affect the Company's financial statements;

3. discuss with management and the independent auditor the Company's earnings press releases (paying particular attention to the use of any "pro forma" or "adjusted" non-GAAP information), the type and presentation of information included in the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies, provided, however, that the Committee need not discuss in advance each instance in which the Company may provide financial information or earnings guidance, except that if such financial information or an earnings guidance news release is issued, such information or release shall be discussed in advance with the Chair of the Committee or, in the event of his or her unavailability, another Committee member;

4. report regularly to the Board a summary of matters addressed at Committee meetings, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor, the performance of the Company's global audit function and any other matters that the Committee deems appropriate or is requested to report by the Board;

5. review the independent financial statement and internal control audit by: (i) reviewing the independent auditor's proposed audit scope and approach; (ii) discussing with the Company's independent auditor the financial statements, the Company's internal control over financial reporting and the audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management, any deficiencies, significant deficiencies or material weaknesses and any other matters described in PCAOB Auditing Standard No. 16 or required by the applicable SEC and NASDAQ Rules; and (iii)

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

reviewing reports submitted to the Committee by the independent auditor in accordance with applicable SEC Rules;

6. oversee a post-audit review of the financial statements and audit and control findings with the Head of Audit, senior global audit staff, the Chief Financial Officer and the Principal Accounting Officer, including any suggestions for improvements provided to management by the independent auditor, management's response to such suggestions and the extent to which such improvements have been implemented;

7. direct the Company's independent auditor to review before filing with the SEC the Company's interim financial statements included in quarterly reports on Form 10-Q, using professional standards and procedures for conducting such reviews.

59. In a section titled "Risk Assessment and Management," the Audit Committee Charter states, in relevant part:

> The [Audit] Committee shall: provide assistance to the Board in overseeing, and provide guidance to management on, the identification, evaluation and mitigation of major strategic, operational, regulatory, accounting and financial reporting, informational and external risks inherent in the Company's business worldwide, including: (i) the guidelines and policies governing the process used by the Company's senior management to assess and manage the Company's exposure to risk; and (ii) the major financial risk exposures and the steps management has taken to monitor and control such exposures, and recommend any changes to such policies and procedures to the Board for its approval and adoption.

60. The Nominating and Governance Committee Charter (the "Governance Charter") imposes additional duties and responsibilities on the members of Governance Committee, which included Anschuetz, Fieldsend, Hegde, Louden, McDaniel, and Zibelman during the Relevant Period. Among the duties imposed by the Governance Charter are:

- The Committee shall assist the Board in discharging its responsibilities with respect to:
  - o The identification of individuals qualified to become directors and the selection or recommendation of candidates for all directorships to be filled by the Board or by the stockholders;
  - o The evaluation of whether an incumbent director should be nominated for re-election to the Board upon expiration of such director's term, based upon factors established for new director candidates as well as the incumbent director's qualifications, performance as a Board member and such other factors as the Committee deems appropriate;
  - o The development, maintenance and recommendation of a set of corporate governance principles applicable to the Company and for periodically reviewing such principles; and

o   In addition, the Committee will undertake those specific duties and responsibilities listed below and such other duties as the Board may from time to time prescribe.

**RELEVANT BACKGROUND**

61.     On April 28, 2011, SunPower entered into a Tender Offer Agreement (the "Tender Offer Agreement") with TotalEnergies Solar INTL SAS, previously referred to as Total Gas & Power USA, SAS ("TE Solar"), a subsidiary of TotalEnergies SE ("TotalEnergies").  In accordance with the terms of the Tender Offer Agreement, dated June 21, 2011, TE Solar acquired around sixty percent of SunPower's outstanding common stock at that time through a cash tender offer (the "Tender Offer").  In conjunction with the Tender Offer, TE Solar and SunPower entered into an Affiliation Agreement (the "Affiliation Agreement" as amended to date) that regulated their relationship after the Tender Offer concluded.

62.     On October 4, 2021, the Company entered into a Securities Purchase Agreement (the "Purchase Agreement") to acquire all of the issued and outstanding membership interests of Solar Holdings, LLC ("Blue Raven").  According to the Company's press release announcing the acquisition, SunPower acquired Blue Raven on October 5, 2021 for cash consideration of up to $165 million.  The Company represented to investors that Blue Raven was one of the fastest growing residential solar providers in the United States.  Founded in 2014, Blue Raven purportedly achieved 93% revenue compound annual growth rate with a direct-to-consumer sales and installation model, conducting over 90% of its volume in 14 states that accounted for only about 5% of SunPower's sales at the time, purportedly creating a significant net-new geographic coverage opportunity for SunPower.  SunPower stated that the acquisition was expected to accelerate its growth strategy and allow it to quickly expand into underpenetrated areas including the Northwest and Mid-Atlantic regions.

63.     On May 24, 2022, TE Solar and TotalEnergies Gaz & Électricité Holdings France SAS ("Total Gaz") reached an agreement (the "Transaction") to sell GIP III Sol Acquisition, LLC ("GIP Sol") a 50% interest less one unit in Sol Holding, LLC ("HoldCo").  HoldCo, GIP Sol, and TotalEnergies Renewables USA, LLC ("TotalEnergies Renewables") all entered into a Letter

Agreement on September 12, 2022, in conjunction with the completion of the Transaction, regarding specific governance rights pertaining to HoldCo and the shares of SunPower's common stock held directly by HoldCo (the "Letter Agreement"). In particular, TotalEnergies Renewables and GIP Sol reached an agreement wherein they would, among other things, do everything possible to induce HoldCo to appoint and elect to SunPower's Board those individuals that HoldCo is authorized to appoint in accordance with the Affiliation Agreement, with GIP Sol retaining the right to appoint two of the minimum of five directors to SunPower's Board so long as HoldCo is entitled to do so.

64. The current composition of the Board, as stipulated in the Affiliation Agreement, consists of nine individuals: the President and CEO of SunPower, five directors appointed by HoldCo, and three independent directors.

65. As members of the Board, TE Solar has appointed defendants Fieldsend, Portes-Laville, and Stoquart.

66. Defendants Bram and Anschuetz are members of the Board who have been designated as GIP Sol members.

## THE INDIVIDUAL DEFENDANTS BREACH THEIR DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

67. Throughout the Relevant Period, the Individual Defendants caused SunPower to issue false and misleading statements and omit material information in the Company's public filings and other disclosures. In particular, the Individual Defendants failed to disclose that: (1) SunPower had reported inaccurate cost of revenue and inventory metrics as a result of material weaknesses in its internal control over financial reporting; (2) due to these material weaknesses, the Company would likely need to restate its prior financial statements, resulting in significant charges; and (3) the Individual Defendants' positive statements regarding SunPower's business, operations, and prospects were materially misleading and/or lacked a reasonable basis in light of the undisclosed issues with the Company's internal controls and financial reporting.

68. The Company submitted the 2022 10-K to the SEC on March 9, 2023. In the 2022 10-K, SunPower reported a 54% increase in revenue for fiscal year 2022, attributing this growth to

its residential business and the acquisition of Blue Raven.  The Company also stated that its Audit Committee and management had assessed its internal control over financial reporting and found it to be effective.

69.     The 2022 10-K disclosed that the total cost of revenues had increased by 53% in fiscal 2022 compared to the previous year, primarily due to the organic growth in residential businesses, the Blue Raven acquisition, and rising costs of materials, freight, and labor.  This increase was partially offset by a decrease in cost of revenues resulting from the wind-down of the Company's Light Commercial business.

70.     SunPower also provided information about its inventories, including PV modules, microinverters, energy storage, and other solar power system component materials.

71.     The Company included a report on its internal control over financial reporting in the 2022 10-K, stating that management had conducted an evaluation using the COSO framework and concluded that the internal control over financial reporting was effective as of January 1, 2023.  The effectiveness of these controls had been audited by Ernst & Young LLP.

72.     Defendants Faricy, Dundas, Portes-Laville, McDaniel, Stoquart, Fieldsend, Bram, Anschuetz, and Hegde signed the 2022 10-K, and Faricy and Dundas signed the Sarbanes-Oxley certifications (the "SOX Certifications") attached to the 2022 10-K, attesting to the accuracy of the report, the fair presentation of the financial statements, and the effectiveness of the Company's disclosure controls and procedures, as well as its internal control over financial reporting.

73.     On March 31, 2023, the Individual Defendants caused the Company to file with the SEC on Form DEF 14A and disseminate to shareholders a Proxy Statement (the "2023 Proxy Statement") in connection with the Company's annual shareholder meeting.  The 2023 Proxy Statement asked stockholders to vote on several matters, including the reelection of defendants Faricy, Anschuetz, and McDaniel to the Board, an advisory vote on executive compensation, and the ratification of Ernst & Young LLP as the Company's independent registered public accounting firm for fiscal year 2023.  The 2023 Proxy Statement was solicited by Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Louden, McDaniel, Portes-Laville, and Stoquart.

74.     The 2023 Proxy Statement discussed the Company's Code of Conduct, stating that it applied to directors, officers, employees, and various third parties.  It also mentioned that any amendments or waivers to the Code of Conduct for certain executive officers would be disclosed on the Company's website.

75.     The Audit Committee Report in the 2023 Proxy Statement provided the same representations as those included in the 2022 10-K, affirming the Audit Committee's oversight responsibilities and the effectiveness of the Company's internal control over financial reporting.

76.     Regarding leadership structure and risk oversight, the 2023 Proxy Statement indicated that having a lead independent director was in the best interest of stockholders and that the Board actively oversaw risks primarily through its committees, particularly the Audit Committee.

77.     The 2023 Proxy Statement also discussed the performance-based portion of named executive officer compensation, stating that it was tied to corporate performance targets and individual performance.

78.     However, the 2023 Proxy Statement was materially misleading because it failed to disclose that the Individual Defendants had violated the Code of Conduct without proper waivers or disclosure, that the Board and its committees were not adequately exercising their risk oversight functions, and that the Company's stock was artificially inflated due to false and misleading statements.

79.     Furthermore, the Proxy Statement omitted material information about the Company's inaccurate reporting of cost of revenue and inventory metrics due to internal control weaknesses, the likelihood of significant charges to restate prior reporting, and the lack of a reasonable basis for the Individual Defendants' positive statements about SunPower's business, operations, and prospects.

80.     As a result of the false and misleading 2023 Proxy Statement, SunPower stockholders voted to reelect certain Individual Defendants to the Board, ratify Ernst & Young LLP as the independent auditor, and approve the named executive officers' compensation.

81.     In the Form 10-Q filed on May 3, 2023, for the period ended April 2, 2023 (the "1Q 2023 10-Q"), SunPower disclosed that the total cost of revenues for the three month period ended

April 2, 2023 was $376,767,000, representing a 36% increase compared to the same period in the previous year and reaffirmed its financial projections for the year. The total gross margin for the quarter was 15%, a decrease of six percentage points from the prior year.

82.    Regarding inventories, the 1Q 2023 10-Q reported that as of April 2, 2023, the Company had $206,083,000 in PV modules, $65,388,000 in microinverters, $59,996,000 in energy storage, and $50,380,000 in other solar power system component materials. The total inventories amounted to $381,847,000, an increase from $316,815,000 as of January 1, 2023. The footnote clarified that PV modules were classified as finished goods, while the remaining components of total inventories were classified as raw materials.

83.    Defendants Faricy and Dundas signed the SOX Certifications appended to the 1Q 2023 10-Q, which were substantially similar or the same as those attached to the 2022 10-K.

84.    The statements made by the Individual Defendants, as detailed above, were materially false and misleading and omitted crucial adverse information about SunPower's business, operations, and future prospects. In particular, the Individual Defendants failed to disclose to investors that: (1) SunPower had reported inaccurate cost of revenue and inventory metrics as a result of material weaknesses in its internal control over financial reporting; (2) due to these internal control deficiencies, the Company would likely need to restate its prior financial statements, which would result in significant charges; and (3) in light of these undisclosed issues, the Individual Defendants' positive statements regarding SunPower's business, operations, and prospects lacked a reasonable basis and were materially misleading.

**THE TRUTH BEGINS TO EMERGE, AND THE INDIVIDUAL DEFENDANTS DOUBLE DOWN ON THEIR FALSE AND MISLEADING STATEMENTS**

85.    On July 26, 2023, SunPower released a press release announcing its preliminary unaudited financial results for the second quarter of 2023 and reporting revised guidance for the full year 2023.

86.    In the press release, defendant Faricy stated that demand in the second quarter had weakened more than expected in the Southeast and Southwest regions due to macroeconomic

uncertainty and higher interest rates, which had slowed lead generation and sales bookings.  To adapt to these market conditions and maintain its competitive edge, the Company announced it would reduce its cost structure and labor costs, as well as take additional measures to improve operational efficiency.

87.     The press release also detailed the revisions to SunPower's 2023 guidance.  Those revisions included the following points:

- GAAP net loss guidance was reduced to ($90) million-($70) million.
- Customer guidance was reduced to 70,000-90,000 incremental customers, with more than 70% of projected installations in the second half of 2023 already accounted for through existing backlog.
- Adjusted EBITDA per customer before platform investment was reduced to $1,450-$1,650, reflecting higher installation costs, lower market pricing, and higher levels of inventory carried from 2022 supply chain disruptions.
- Platform Investment was expected to be reduced to $50 million-$70 million for the year.
- Adjusted EBITDA guidance for the year was reduced to $55 million-$75 million.

88.     Following this announcement, SunPower's share price fell by $1.77 per share, or 18.5%, closing at $9.45 per share on July 26, 2023.

89.     SunPower filed a Form 10-Q with the SEC on August 2, 2023, for the quarter ended July 2, 2023 (the "2Q 2023 10-Q").  In this filing, the Company reported a 25% change in total costs of revenue compared to the same period in the previous year and provided details on its microinverter inventory.

90.     Regarding costs of revenues, the 2Q 2023 10-Q disclosed that for the three months ending July 2, 2023, total cost of revenues was $399,724,000, a 19% increase from $336,273,000 in the same quarter of the previous year.  For the six months ended July 2, 2023, total cost of revenues

1  amounted to $769,667,000, representing a 25% increase compared to $614,241,000 in the

2  corresponding period of the prior year.

3          91.     The Company also reported that total gross margin for the three months ending July

4  2, 2023 was 14%, a decrease of six percentage points from 20% in the same quarter of the previous

5  year.  For the six months ended July 2, 2023, the total gross margin was 15%, a decrease of five

6  percentage points from 20% in the corresponding period of the prior year.

7          92.     Regarding inventory, SunPower reported that as of July 2, 2023, the Company had

8  $244,068,000 in PV modules, $68,832,000 in microinverters, $58,670,000 in energy storage, and

9  $52,470,000 in other solar power system component materials.  The total inventories amounted to

10 $424,040,000, an increase from $316,815,000 as of January 1, 2023.  The footnote clarified that PV

11 modules were classified as finished goods, while the remaining components of total inventories were

12 classified as raw materials.

13         93.     Defendants Faricy and Eby signed SOX Certifications that were appended to the 2Q

14 2023 10-Q.  These SOX Certifications were substantively similar or the same as those attached to

15 the 2022 10-K.

16         94.     The statements made by the Individual Defendants, as detailed above, were

17 materially false and misleading and omitted crucial adverse information about SunPower's business,

18 operations, and future prospects.  In particular, the Individual Defendants failed to disclose to

19 investors that: (1) SunPower had reported inaccurate cost of revenue and inventory metrics as a

20 result of material weaknesses in its internal control over financial reporting; (2) due to these internal

21 control deficiencies, the Company would likely need to restate its prior financial statements, which

22 would result in significant charges; and (3) in light of these undisclosed issues, the Individual

23 Defendants' positive statements regarding SunPower's business, operations, and prospects lacked a

24 reasonable basis and were materially misleading.

25                              **THE TRUTH IS REVEALED**

26         95.     On October 24, 2023, SunPower filed a Form 8-K with the SEC disclosing that its

27 previously issued financial statements for the fiscal year ended January 1, 2023, and the first two

28

1   quarters of fiscal year 2023 could no longer be relied upon.  The Company stated that it would restate

2   these financial statements in amendments to its Annual Report on Form 10-K and its Quarterly

3   Reports on Form 10-Q for the affected periods (collectively, the "Restatement").

4          96.     SunPower preliminarily determined that it had overstated the value of consignment

5   inventory of microinverter components at certain third-party locations by approximately $16 million

6   to $20 million during the affected periods, resulting in an understatement of the associated cost of

7   revenue.  The Company noted that it had not fully completed its review and that the expected

8   financial impact of the errors was preliminary and subject to change.  Additionally, SunPower

9   disclosed that it would be correcting other immaterial errors in the affected periods.

10         97.     As a result of these issues, SunPower's management concluded that a material

11   weakness existed in the Company's internal control over financial reporting.  The Company's

12   management also determined that its disclosure controls and procedures and internal control over

13   financial reporting were not effective as of January 1, 2023, and its disclosure controls and

14   procedures were not effective as of April 2, 2023 and July 2, 2023.  Furthermore, Ernst & Young

15   LLP, the Company's independent registered public accounting firm, determined that it would revise

16   its report on internal control over financial reporting as of January 1, 2023 to an adverse opinion,

17   stating that internal control over financial reporting was ineffective.

18         98.     Following this announcement, SunPower's stock price fell by $0.90 per share, or

19   18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

20         99.     Further details regarding the severity and duration of SunPower's accounting

21   manipulations emerged in the months following the Company's initial disclosure.  On November 1,

22   2023, *PV Tech* published an article revealing that SunPower had been hit with class action lawsuits

23   relating to the improper accounting.  The article noted that the Company would be restating its

24   financials for the fiscal year 2022 and the first two quarters of 2023, and that it had reported

25   significant net losses and EBITDA losses in Q2 2023, indicating that the improper accounting had

26   allowed SunPower to conceal its deteriorating financial performance from the market.

27

28
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

100.    On November 27, 2023, SunPower disclosed additional fallout from its accounting failures, revealing that it had received a notice of deficiency from Nasdaq threatening to delist the Company's shares.  The notice cited SunPower's failure to timely file its quarterly report on Form 10-Q for Q3 2023 as a violation of Nasdaq's listing rules.  SunPower attributed the delay in filing to "the time and effort required to complete the Restatement of certain of the Company's financial statements," underscoring the extensive nature of the Company's accounting problems.

101.    Perhaps most concerningly, SunPower further disclosed on November 27, 2023 that it was negotiating with its lenders regarding "the effects of the Restatement" under the Company's credit agreement.  This disclosure indicates that SunPower may be in breach of debt covenants or other obligations under its credit agreement as a result of the improper accounting, placing the Company at risk of an event of default.  Given SunPower's precarious financial position, the possibility of a default on its significant outstanding debt poses a material risk to the Company's business and prospects.

102.    The Restatement was filed with the SEC on December 18, 2023.

103.    In breach of their fiduciary duties, the Individual Defendants, failed to prevent the Company from engaging in the foregoing misconduct despite numerous warning signs.  On February 26, 2024, SunPower announced that defendant Faricy had abruptly resigned from his positions as CEO and Chairman of the Board, effective immediately.  The Company did not provide any explanation for Faricy's sudden departure, stating only that the Board had launched a search process to identify a permanent replacement.  In the interim, the Board established an Office of the Chairman, led by newly appointed Executive Chairman and Principal Executive Officer Werner and including other unnamed company executives, to oversee SunPower's operations.  The suspicious timing of Faricy's unexpected departure, in the midst of the Relevant Period, suggests that he was pushed out due to the impending revelation of SunPower's accounting manipulations.

104.    On February 15, 2024, SunPower announced devastating financial results for the fourth quarter and fiscal year 2023.  For Q4 2023, the Company reported a GAAP net loss from continuing operations of $115.6 million and an Adjusted EBITDA loss of $67.6 million.  For full

year 2023, SunPower reported a GAAP net loss from continuing operations of $227.1 million and an Adjusted EBITDA loss of $84.2 million, a shocking decline from the $70 million in positive Adjusted EBITDA reported for fiscal year 2022. Tellingly, the Company disclosed that $48 million of the difference between its Adjusted EBITDA results and prior guidance "can be attributed to restatement impacts and items we believe are one-time charges or not expected to recur," underscoring the extent to which SunPower's previously reported results had been inflated by improper accounting. Concurrent with these abysmal results, SunPower announced that it had secured $175 million in additional capital, consisting of $45 million from prior bridge funding, an $80 million new investment, and $50 million contingent upon meeting certain conditions, as well as $25 million in additional revolving debt capacity, effectively diluting existing shareholders to keep the Company afloat.

105.    Just two weeks later, on February 29, 2024, SunPower disclosed that it would be unable to file its Annual Report on Form 10-K for fiscal year 2023 on time. The Company expressly attributed the delay to "the time and effort that was required to complete restatements of the Company's prior period financial statements, which were filed with the SEC on December 18, 2023." Thus, more than two months after restating nearly two years of financial statements, SunPower still had not gotten its books in order and required yet another extension to complete its delinquent reporting. The fact that the Company has been unable to catch up on its required reporting, even after purportedly remediating its accounting failures, indicates that its internal controls remain deficient.

106.    On April 23, 2024, investors learned that SunPower's accounting woes were far from over. On that date, the Company disclosed that it had identified additional misstatements in its fiscal 2022 financial results, including the improper capitalization of certain costs and incorrect classification of certain expenses, that would require correction. Specifically, SunPower stated that its previously reported fiscal year 2022 income from continuing operations before income taxes had been overstated by $15 to $25 million. Shockingly, the Company further disclosed that its independent auditor, Ernst & Young LLP, had determined that its previously issued audit reports on

SunPower's 2022 financial results "should no longer be relied upon"—effectively admitting that its prior Restatement could not be trusted.  Making matters worse, SunPower disclosed that it had identified a new material weakness in its internal controls in addition to those that previously resulted in the need to restate nearly two years of financial statements.  These compounding failures demonstrate that SunPower's accounting remains rife with errors and that its executives and Board still have not implemented effective processes to ensure accurate financial reporting, despite the Individual Defendants' fiduciary obligation to do so.

107.    The market's reaction to the April 23, 2024 disclosures was swift and severe.  As reported by *Seeking Alpha*, SunPower shares "plunge[d] after disclosing plans to restate earnings." The Truist analysts noted that this latest revelation of faulty accounting is likely to "drive more investor concern on potential covenant violations/overall [management] credibility given the continued challenges SPWR continues to face," especially in light of the Company's prior restatements and near-default on its credit facility in 2023.

## REPURCHASES DURING THE RELEVANT PERIOD

108.    During the Relevant Period, the Individual Defendants caused SunPower to engage in a series of stock repurchases that resulted in substantial harm to the Company.  From March 2023 through August 2023, SunPower spent a total of over $6.36 million to repurchase 478,345 shares of its own common stock at prices that were artificially inflated due to the Individual Defendants' misrepresentations and omissions.

109.    According to the Company's 1Q 2023 10-Q, SunPower purchased 290,752 shares of its common stock between February 27, 2023, and April 2, 2023, at an average price of $15.31 per share, totaling approximately $4,451,413.12.  However, as the Company's stock was actually worth only $4.06 per share at the close of trading on October 25, 2023, SunPower overpaid by approximately $3,270,960 for these repurchases.

110.    The Company's 2Q 2023 10-Q revealed that SunPower made additional stock repurchases during the following periods:

- Between April 3, 2023, and April 30, 2023, the Company purchased 26,712 shares at an average price of $13.16 per share, totaling approximately $351,529.92.  Given the actual value of $4.06 per share, SunPower overpaid by approximately $243,079.20.

- From May 1, 2023, to May 28, 2023, SunPower bought 18,641 shares at an average price of $11.29 per share, amounting to approximately $210,456.89.  Considering the true value of $4.06 per share, the Company overpaid by approximately $134,774.43.

- Between May 29, 2023, and July 2, 2023, the Company acquired 81,479 shares at an average price of $10.72 per share, totaling approximately $873,454.88.   With the actual value being $4.06 per share, SunPower overpaid by approximately $542,650.14.

111.    SunPower's Form 10-Q for the third quarter of 2023 (the "3Q 2023 10-Q"), filed with the SEC on December 18, 2023, disclosed further stock repurchases:

- From July 3, 2023, to July 30, 2023, the Company purchased 8,821 shares at an average price of $9.68 per share, amounting to approximately $85,387.28.  As the true value was $4.06 per share, SunPower overpaid by approximately $49,574.

- Between July 31, 2023, and August 27, 2023, SunPower bought 10,595 shares at an average price of $8.67 per share, totaling approximately $91,858.65.  Considering the actual value of $4.06 per share, the Company overpaid by approximately $48,842.95.

- From August 28, 2023, to October 1, 2023, the Company acquired 41,345 shares at an average price of $7.16 per share, amounting to approximately $296,030.20.  With the true value being $4.06 per share, SunPower overpaid by approximately $128,169.50.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

112.    As a result of the artificial inflation in SunPower's stock price caused by the Individual Defendants' misrepresentations and omissions, the Company paid an average of $6.40 more than the actual worth of each share during the Relevant Period.  Consequently, SunPower's total overpayment for repurchases of its own stock during this period amounted to approximately $4.41 million.

### INVESTORS FILE SECURITIES CLASS ACTIONS

113.    On October 27, 2023, a purported purchaser of SunPower stock filed a securities class action complaint in the United States District Court for the Northern District of California against the Company and defendants Dundas, Eby, and Faricy.  The case, captioned *Craven v. SunPower Corporation et al.*, Case No. 3:23-cv-05544, alleges that throughout the class period of March 9, 2023, to October 4, 2023, the defendants made materially false and/or misleading statements and failed to disclose material adverse facts about SunPower's business, operations, and prospects (the "Craven Action").

114.    Subsequently, on December 6, 2023, another purported purchaser of SunPower stock filed a similar securities class action complaint in the United States District Court for the Northern District of California against the Company and defendants Dundas, Eby, and Faricy.  This case, captioned *Simpson v. SunPower Corporation et al.*, Case No. 3:23-cv-06302, , also alleges that throughout the same class period of March 9, 2023, to October 4, 2023, the defendants made materially false and/or misleading statements and failed to disclose material adverse facts about SunPower's business, operations, and prospects (the "Simpson Action").

115.    On January 29, 2024, Judge Rita F. Lin entered an order consolidating the Craven Action and the Simpson Action under the caption *In re SunPower Corporation Securities Litigation*, Case No. 3:23-cv-05544-RFL. Thereafter, the plaintiffs filed their consolidated amended complaint on March 29, 2024.

**THE INDIVIDUAL DEFENDANTS' MISCONDUCT
DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO SUNPOWER**

116.    SunPower issued inaccurate public statements regarding its operations, future prospects, and internal controls due to the misconduct of the Individual Defendants.   This misconduct has severely damaged the reputation of SunPower.

117.    SunPower has (and will continue to) spend substantial financial resources defending against and settling the Securities Class Actions as a direct and immediate consequence of the actions of the Individual Defendants.

118.    SunPower's market capitalization has substantially been harmed, depreciating by millions of dollars due to the conduct described herein, as a direct and immediate consequence of the Individual Defendants' actions as alleged above.

119.    Finally, SunPower's corporate image and goodwill have been irreparably harmed by the actions of the Individual Defendants.   SunPower will be unable to secure favorable terms for future equity capital or debt financing due to the "liar's discount," a phenomenon that affects stocks of companies implicated in fraudulent activities and having misled investors.   This disadvantage is expected to persist for the foreseeable future.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

120.    By engaging in the illicit activities claimed herein, the Individual Defendants have either pursued or participated in a shared scheme of action and have collaborated and conspired to advance their misconduct.   As alleged in herein, the Individual Defendants induced the Company to conceal the truth.   Additionally, the Individual Defendants assisted and abetted one another in the performance of their respective responsibilities.

121.    The conspiracy, common enterprise, and/or common course of conduct served the following purposes and had the following effects: (i) to aid and obscure the unlawful activities of the Individual Defendants, which included unjust enrichment and breaches of fiduciary duty; (ii) to conceal unfavorable information regarding the Company's financial state, operations, future business prospects, and internal controls; and (iii) to artificially inflate the Company's stock price.

122.    The Individual Defendants carried out their conspiracy, common enterprise, and/or common course of conduct by causing the Company to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws with intent, recklessness, or gross negligence.  To advance this scheme, conspiracy, and course of action, the Defendants individually and collectively caused the Company to conceal the facts as alleged herein.  Because the actions described herein occurred with the Board's authorization and approval, the Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise and/or common course of conduct that is the subject of this Complaint.

123.    Each of the Defendants individually conspired, supported, and provided significant aid in the wrongful acts that are the subject of this Complaint.  Each of the Individual Defendants acted with actual or constructive knowledge of the principal wrongdoing, either directly participated in or substantially assisted in the commission of that wrongdoing, and was or should have been cognizant of his or her overall contribution to and advancement of the wrongdoing by taking such actions to substantially assist in its commission.

124.    Throughout all pertinent periods, each of the Individual Defendants acted as the agent of the other Individual Defendants and SunPower and did so in the ordinary tenor and scope of their agency.

**PLAINTIFFS HAVE BEEN STOCKHOLDERS SINCE THE
ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY
REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS**

125.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

126.    Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

127.    Plaintiffs are owners of SunPower common stock and have been owners of SunPower common stock since the wrongdoing alleged herein.

128.    Plaintiffs will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

**DEMAND IS FUTILE BECAUSE EACH DIRECTOR DEFENDANT**
**FACES A SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY**

129.    At the time Plaintiffs commenced this action, the Board consisted of the seven Director Defendants (Anschuetz, Bram, Fieldsend, Hegde, Louden, Stoquart, and Zibelman) and two Relevant Non-Parties (Barrois and Werner).  Defendant McDaniel retired in July 2023, and efendants Faricy and Portes-Laville resigned on February 26, 2024.

130.    The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.  The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning SunPower's business, operations, prospects, internal controls, and financial statements.

131.    Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

132.    Here, the Director Defendants failed to, among other things, implement adequate internal controls over financial reporting to prevent the Company from overstating inventory and understating cost of revenue.  This fact is shown by, among other things, the Company's disclosure in the October 24, 2023 Form 8-K that its internal control over financial reporting suffered from

1    material weaknesses that rendered it ineffective and resulted in the need to restate multiple quarters

2    of financial statements.

3         133.    The Director Defendants also ignored red flags of the Officer Defendants' false and

4    misleading statements in the form of publicly available information.  For example, analysts noted

5    that SunPower faced increasing competition and pricing pressure in the residential solar market,

6    which was likely to negatively impact its growth and profitability.  The Director Defendants failed

7    to ensure that these material risks were being adequately disclosed to investors.

8         134.    Defendants Anschuetz, Bram, Fieldsend, Dundas, Hegde, Louden, McDaniel, Portes-

9    Laville, and Stoquart furnished to investors and/or solicited the 2023 Proxy Statement to call for a

10   shareholder vote to, *inter alia*, reelect defendants Faricy, Anschuetz, and McDaniel to the Board,

11   thus allowing them to continue breaching their fiduciary duties to SunPower.  These Director

12   Defendants also approved the 2023 Proxy Statement's false and misleading statements and,

13   therefore, face a substantial likelihood of personal liability.  Thus, they cannot exercise disinterested

14   business judgment in considering a demand.

15        135.    The Director Defendants face a substantial likelihood of personal liability because of

16   their conscious and knowing authorization of false and misleading statements, their failure to timely

17   correct such statements, their failure to take necessary and appropriate steps to ensure that the

18   Company's internal controls were sufficiently robust and effective and were being implemented

19   effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties

20   were being discharged in good faith and with the required diligence constitute breaches of the

21   fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial

22   likelihood of liability.

23        136.    If the Director Defendants were to bring a suit on behalf of SunPower to recover

24   damages sustained as a result of this misconduct, they would expose themselves to significant

25   liability.  For this reason, Plaintiffs' making a demand would be futile.

26

27

28

1
2

**THE AUDIT COMMITTEE DEFENDANTS FACE**
**A GREATER LIKELIHOOD OF PERSONAL LIABILITY**

3       137.    As members of the Audit Committee during the Relevant Period, the Audit
4  Committee Defendants (Hegde, Louden, McDaniel, and Zibelman) participated in and knowingly
5  approved the filing of false financial statements.  More specifically, they were obligated to review
6  the Company's annual and quarterly reports to ensure their accuracy.  Instead, the Audit Committee
7  Defendants failed to ensure the integrity of the Company's financial statements and financial
8  reporting process and its systems of internal accounting and financial controls and other financial
9  information provided by the Company as required by the Audit Committee Charter.  For this reason,
10  the Audit Committee Defendants cannot exercise disinterested business judgment in considering a
11  demand.

12
13

**THE GOVERNANCE COMMITTEE DEFENDANTS**
**FACE A GREATER LIKELIHOOD OF PERSONAL LIABILITY**

14       138.    The Governance Committee Defendants (Anschuetz, Fieldsend, Hegde, Louden,
15  McDaniel, and Zibelman) are sophisticated members of the Board with substantial training and
16  experience on corporate governance matters and the importance of accurate disclosures to the
17  investing public.  Accordingly, the Governance Committee Defendants had to have known that: (i)
18  SunPower suffered from material weaknesses in its internal controls over financial reporting; (ii)
19  these material weaknesses caused SunPower to inaccurately report key metrics including cost of
20  revenue and inventory; and (iii) consequently, SunPower would likely incur significant costs to
21  restate its prior financial statements.  Additionally, the Governance Committee Defendants are well
22  aware of the importance of preventing insiders from trading on non-public information made
23  available to them as officers and directors of the Company.  Further, during the Relevant Period, the
24  Governance Committee Defendants recommended the nomination and renomination of unqualified
25  directors for their election and reelection as members of the Board.  Therefore, the Governance
26  Committee Defendants face a substantial likelihood of personal liability and cannot exercise
27  disinterested business judgment in considering a demand to initiate and prosecute this action.

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

2

**DEFENDANTS ANSCHUETZ, BRAM,
FIELDSEND, AND STOQUART LACK INDEPENDENCE**

3       139.    Defendants Anschuetz, Bram, Fieldsend, and Stoquart lack independence for

4   additional reasons.

5       140.    As SunPower admits, defendant Anschuetz is not an independent director.  He has

6   served on the Board since 2021 and is a member of the Nominating Committee.  Anschuetz's lack

7   of independence stems from his close ties to TotalEnergies and its affiliates, which have maintained

8   significant control over SunPower through the Tender Offer Agreement, Affiliation Agreement, and

9   other arrangements.  These entities have the power to designate a majority of SunPower's Board,

10  including Anschuetz.

11      141.    Defendant Bram, a Company director since 2022 and a member of the Compensation

12  Committee, is also beholden to TotalEnergies and its affiliates due to their right to appoint him to

13  the Board pursuant to the Agreements.  The Company admits that Bram is not independent.

14      142.    Defendant Fieldsend, a SunPower director since 2022 and a member of the

15  Nominating Committee, similarly lacks independence due to his appointment by TotalEnergies and

16  its affiliates.  The Company concedes Fieldsend is not independent.

17      143.    Finally, defendant Stoquart lacks independence because TotalEnergies and its

18  affiliates appointed him to the Board.  SunPower admits Stoquart is not independent.

19                          **FIRST CAUSE OF ACTION**

20          **Against the Individual Defendants for Breach of Fiduciary Duties**

21      144.    Plaintiffs incorporate by reference and reallege each and every allegation set forth

22  above as though fully set forth herein.

23      145.    Each Individual Defendant owed to the Company the duty to exercise candor, good

24  faith, and loyalty in the management and administration of SunPower's business and affairs.

25      146.    Each of the Individual Defendants violated and breached his or her fiduciary duties

26  of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

27

28

147.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of SunPower.

148.     In breach of their fiduciary duties owed and owe to SunPower, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, (i) SunPower suffered from material weaknesses in its internal controls over financial reporting; (ii) these material weaknesses caused SunPower to inaccurately report key metrics including cost of revenue and inventory; and (iii) consequently, SunPower would likely incur significant costs to restate its prior financial statements.

149.     Accordingly, SunPower's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

150.     The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby, rendering themselves personally liable to the Company for breaching their fiduciary duties.

151.     The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their fiduciary duties.

152.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements.   The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts even though such facts were available to them.   Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

153.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls.  The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.  Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.  The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

154.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

155.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, SunPower has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## SECOND CAUSE OF ACTION

### Against the Officer Defendants for
### Contribution under Sections 10(b) and 21D of the Exchange Act

156.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

157.    SunPower along with the Officer Defendants (defendants Dundas, Eby, and Faricy) are named as defendants in at least one of the Securities Class Actions, which assert claims under the federal securities laws for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5. If the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Officer Defendants' willful and/or reckless violations of their obligations as officers and/or directors of SunPower.

158.    Because of their positions of control and authority as officers and/or directors of SunPower, the Officer Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of SunPower, including the wrongful acts complained of herein and in the Securities Class Action.

159.    Accordingly, the Officer Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which creates an implied private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

160.    As such, SunPower is entitled to receive all appropriate contribution or indemnification from the Officer Defendants.

### THIRD CAUSE OF ACTION

**Against the Proxy Defendants for**
**Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9**

161.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

162.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

163.    The 2023 Proxy Statement violated Section 14(a) and Rule 14a-9 because it solicited SunPower stockholder votes for, *inter alia*, director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's shortcomings in connection with its financial misstatements.

164.    The Proxy Defendants (Anschuetz, Bram, Dundas, Faricy, Fieldsend, Hegde, Louden, McDaniel, Portes-Laville, and Stoquart) made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in

violation of Section 14(a) and Rule 14a-9.  By virtue of their positions within the Company and roles in the process and in the preparation of the 2023 Proxy Statement, the Proxy Defendants were aware of this information and of their duty to disclose this information in the 2023 Proxy Statement.

165.    The Proxy Defendants knew that the statements contained in the 2023 Proxy Statement were materially false and misleading.

166.    The omissions and false and misleading statements in the 2023 Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the re-election of directors.  Indeed, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 2023 Proxy Statement and in other information reasonably available to stockholders.

167.    As a direct and proximate result of the dissemination of the false and misleading 2023 Proxy Statement that the Proxy Defendants used to obtain stockholder approval of and thereby re-elect directors, Nominal Defendant SunPower suffered damage and actual economic losses (i.e., wrongful re-election of directors) in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Against the Individual Defendants for Unjust Enrichment

168.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

169.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, SunPower.

170.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and received bonuses, stock options, or similar compensation from SunPower that was tied to the performance or artificially inflated valuation of SunPower, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

171.     Plaintiffs, as a stockholders and representatives of SunPower, seek restitution from the Individual Defendants and seek an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

172.     Plaintiffs, on behalf of SunPower, have no adequate remedy at law.

<b>FIFTH CAUSE OF ACTION</b>

<b><u>Against the Individual Defendants for Waste of Corporate Assets</u></b>

173.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

174.     As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend legal actions (evidenced, for example, by the Securities Class Actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

175.     As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

176.     Plaintiffs, on behalf of SunPower, have no adequate remedy at law.

<b>SIXTH CAUSE OF ACTION</b>

<b><u>Against all the Individual Defendants for Aiding and Abetting</u></b>

177.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

178.     Each of the Individual Defendants acted and is acting with knowledge of, or with disregard to, the fact that the Defendants are in breach of their fiduciary duties to SunPower and has participated in a conspiracy in breach of fiduciary duties.

179.     In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct.  The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or

design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

180.    The Individual Defendants collectively and individually initiated and followed a course of conduct that violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders; misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

181.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, including violations of the federal securities laws and breaches of fiduciary duty.

182.    Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

183.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Declaring that Plaintiffs may maintain this derivative action on behalf of SunPower and that Plaintiffs are proper and adequate representatives of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Awarding prejudgment interest to the Company;

1    D.       Granting appropriate equitable relief to remedy Individual Defendants' breaches of

2   fiduciary duties and other violations of law;

3    E.       Awarding to Plaintiffs the costs and disbursements of the action, including reasonable

4   attorneys' fees, accountants' and experts' fees and costs and expenses; and

5    F.       Granting such other and further relief as the Court deems just and proper.

6                                    **<u>JURY TRIAL DEMANDED</u>**

7        Plaintiffs hereby demand a trial by jury.

8    Dated:  May 9, 2024                          Respectfully submitted,

9

10                                           */s/Marion C. Passmore*
                                           Marion C. Passmore (SBN 228474)
11                                             passmore@bespc.com
                                           Melissa A. Fortunato (SBN 319767)
12                                             fortunato@bespc.com
                                           BRAGAR EAGEL & SQUIRE, P.C.
13                                          580 California Street, Suite 1200
                                           San Francisco, California 94104
14                                          Telephone: (415) 568-2124
                                           Facsimile: (212) 214-0506

15                                          *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**<u>VERIFICATION</u>**

I, Galen Bradford, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint ("Complaint"). I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal; knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further verify that I am a current holder, and have been a holder, of SunPower Corporation common stock since the time of Defendant's wrongdoing alleged in the complaint. I declare under penalty of perjury that the foregoing is true and correct.

Executed this <u>26</u> day of April, 2024.

Galen Bradford (Apr 26, 2024 08:39 GMT+2)
Galen Bradford

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

## **VERIFICATION**

2      I, Gary Brown, hereby verify that I have authorized the filing of the attached Verified

3 Stockholder Derivative Complaint ("Complaint"). I have reviewed the allegations made in the

4 Complaint, and as to those allegations of which I have personal knowledge, I believe those

5 allegations to be true. As to those allegations of which I do not have personal; knowledge, I rely on

6 my counsel and their investigation and, for that reason, believe them to be true. I further verify that

7 I am a current holder, and have been a holder, of SunPower Corporation common stock since the

8 time of Defendant's wrongdoing alleged in the complaint. I declare under penalty of perjury that the

9 foregoing is true and correct.

10      Executed this 26th day of April, 2024.

11

*Gary Brown*

12 Gary Brown (Apr 26, 2024 08:06 CDT)

Gary Brown

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT